## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# FILED

JUN 1 8 2008

**Clerk,** U.S. District and
**Bankruptcy Courts**

Clark S. CHENEY,
517 F Street, NE
Washington, DC  20002
(202) 253-7195

      Plaintiff,

      v.

IPD ANALYTICS, LLC,
1170 Kane Concourse, Suite 300
Bay Harbor Islands, FL  33154

INTELLECTUAL PROPERTY
DEVELOPMENT, INC.,
1170 Kane Concourse, Suite 300
Bay Harbor Islands, FL  33154

      and

Howard Benjamin KRASS,
1170 Kane Concourse, Suite 300
Bay Harbor Islands, FL  33154

      Defendants.

Case: 1:08-cv-01044
Assigned To : Bates, John D.
Assign. Date : 6/18/2008
Description: TRO/PI

JURY ACTION

### COMPLAINT AND JURY DEMAND

Plaintiff Clark S. Cheney, for his complaint against IPD Analytics, LLC, Intellectual

Property Development, Inc., and Howard B. Krass (collectively "Defendants") alleges as

follows·

### Nature of the Action

1.    This lawsuit arises from Defendants' legal practice in Florida.  Mr. Cheney seeks

declaratory judgments that Defendants cannot prevent Mr. Cheney from providing legal services

in competition with Defendants. Mr. Cheney also brings claims against Defendants for breach of contract, fraudulent inducement, promissory estoppel, and violations of the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 et seq. ("ERISA")).

**Parties**

2.     Plaintiff Clark S. Cheney is a citizen of the District of Columbia and a member of the District of Columbia Bar. Mr. Cheney is also a registered patent attorney. Mr. Cheney maintains an address at 517 F Street, NE, Washington, DC, 20002.

3.     Defendant IPD Analytics, LLC (hereafter "IPDA"), is a limited liability corporation organized and existing under the laws of Florida having a principal place of business at 1170 Kane Concourse, Suite 300, Bay Harbor Islands, FL, 33154. IPDA provides legal analysis to hedge funds, mutual funds, and others.

4.     Defendant Intellectual Property Development, Inc., is a corporation organized and existing under the laws of Florida having a principal place of business at 1170 Kane Concourse, Suite 300, Bay Harbor Islands, FL, 33154. Intellectual Property Development, Inc., is the principal shareholder of IPDA and receives revenue from IPDA. Upon information and belief, Intellectual Property Development, Inc., is a corporate shell that has no substantial business independent of IPDA.

5.     Defendant Howard Benjamin Krass is a citizen of the State of Florida and maintains an address at 1170 Kane Concourse, Suite 300, Bay Harbor Islands, FL, 33154. Mr. Krass holds himself out to be the Chief Executive Officer, General Manager, and Registered Agent of IPDA. Mr. Krass is also the trustee of the IPDA 401(k) Plan. Mr. Krass also holds himself out to be the President, Secretary, Director, Registered Agent, and a principal shareholder of Defendant Intellectual Property Development, Inc.

## Jurisdiction and Venue

6.    There exists an actual, substantial, and continuing controversy between the parties at least as to whether Defendants can legally prevent Mr. Cheney from providing legal services in competition with Defendants. This court has jurisdiction to declare the rights and legal relations of the parties under 28 U.S.C. §§ 2201, 2202.

7.    This court has subject matter jurisdiction for Mr. Cheney's declaratory judgment, breach of contract, fraudulent inducement, and promissory estoppel claims at least under 28 U.S.C. § 1332.

8.    This court has jurisdiction for Mr. Cheney's ERISA claims at least under 29 U.S.C. § 1132. This court also has jurisdiction for Mr. Cheney's ERISA claims under 28 U.S.C. § 1331, as ERISA is a law of the United States.

9    This court also has jurisdiction over claims herein under 28 U.S.C. § 1367.

10.    This court has personal jurisdiction over Defendants because they conduct substantial business in, or have regular and systematic contact with, this District.

11.    Venue is proper in this District under 28 U.S.C. § 1391 and/or 29 U.S.C. § 1132.

## Background

### A.    Defendants' Equity Agreement with Mr. Cheney

12.    In January 2006, Plaintiff Clark Cheney was employed as an associate attorney in the Washington, D.C., office of a national law firm. He had just received a positive performance review and a substantial bonus, and was on track to become a partner at the law firm. In 2006, the average profit per partner at the firm was $1.45 million.

3

13.     In the weeks before January 2006, Defendant Howard Krass talked with Mr.
Cheney in an attempt to persuade Mr. Cheney to leave his law firm and join Mr. Krass' company
IPDA.

14.     IPDA contracts with clients to provide legal services for a set fee.  Clients receive
periodic reports that analyze lawsuits and other legal issues potentially affecting publicly traded
companies.  Clients also have telephone discussions with attorneys employed by IPDA.

15.     Defendants invited Mr. Cheney to interview with IPDA in Bay Harbor Islands,
Florida (a suburb of Miami).  Mr. Cheney traveled to Florida in January 2006 for a multi-day
interview.  During the trip, Mr. Cheney met with Mr. Krass and a Director of IPDA named Mark
Mamolen.

16.     During the recruiting process, Mr. Krass and Mr. Mamolen told Mr. Cheney that
IPDA has several advantages over a law firm.  Mr. Krass and Mr. Mamolen represented that
because the business of IPDA does not constitute the practice of law, IPDA is not subject to the
legal and ethical restrictions normally applied to law firms.  Upon further questioning by Mr.
Cheney on this point, Mr. Krass represented that Defendants possess a written opinion from
outside counsel that the business of IPDA does not constitute the practice of law.  Knowing that
Mr Krass and Mr. Mamolen were senior attorneys, Mr. Cheney relied upon their representations.

17.     Also during the recruiting process, Mr. Cheney expressed his concern that joining
IPDA would mean forsaking the opportunity for a lucrative partnership at his law firm in the
future.  Mr. Krass and Mr. Mamolen each expressly promised Mr. Cheney equity ownership in
IPDA if Mr. Cheney joined IPDA.

18.     On February 3, 2006, Mr. Krass (on behalf of IPDA) and Mr. Cheney entered into
a written contract, referred to herein as the Equity Agreement.  Under the Equity Agreement, Mr.

4

Krass and IPDA agreed, among other things, that Mr. Cheney would receive equity ownership in IPDA as part of his bonus package for calendar year 2007.

**B.    Mr. Cheney's Duties at IPDA**

19.    Mr. Cheney conducted legal research and wrote reports for IPDA's three services, each of which focuses on a different technology area (Pharmaceuticals, Medical Technology, and Technology/Media).  Mr. Cheney's reports described currently pending lawsuits and presented Mr. Cheney's predictions (to the extent possible) of the outcomes of the lawsuits.

20.    During his employment at IPDA, Mr. Cheney participated in telephone conversations with IPDA clients nearly every day.  When introducing Mr. Cheney to clients on the telephone, Mr. Krass informed clients that Mr. Cheney is a patent attorney.  Mr. Krass also described Mr. Cheney's past experience as a patent examiner and patent litigator.

21.    In telephone conversations with clients, Mr. Cheney would (1) answer questions about reports he had written; (2) apply law to actual and hypothetical facts and draw legal conclusions; and (3) tailor his responses to the particular concerns of the client.

22.    Clients frequently asked for Mr. Cheney by name when calling IPDA with questions.  Clients also sent questions to Mr. Cheney's individual email address at IPDA or called Mr. Cheney on his cell phone.  Mr. Cheney responded to all inquiries made to him personally and often responded to inquiries made through other IPDA personnel.

**C.    The Employment Agreement**

23.    As a condition of employment, Mr. Krass required Mr. Cheney to sign a document titled "Employment Agreement."

24.    One paragraph in the Employment Agreement is titled "Non-Competition."  It states that, for one year after Mr. Cheney's employment by IPDA, Mr. Cheney will refrain from

providing competing services to anyone that subscribed to IPDA's service during Mr Cheney's employment. The paragraph also states that during the same one year period Mr. Cheney will not provide competing services to clients that have never had a relationship with IPDA.

25.    Another paragraph in the Employment Agreement is titled "Non-Solicitation/Non-Hire of Employees." It states that, for two years after Mr Cheney's employment by IPDA, Mr. Cheney will refrain from soliciting IPDA personnel, including other attorneys, for employment.

**D.    Defendants' Subscription Agreement with Clients**

26.    Before providing clients with legal analysis, IPDA requires each client to sign a form contract titled "Subscription Agreement." The Subscription Agreement contains a paragraph titled "Non-Hire." It states that the client shall not contract with any ex-employee of IPDA within one year of the employee's departure from IPDA. The paragraph also states that the client will not contract with any ex-employee of IPDA within one year after the termination of the client's contract.

27.    Defendants know and intend that clients rely upon IPDA's legal analysis as at least one factor in making investment decisions.

**E.    IPDA's 401(k) Plan**

28    In December 2006, IPDA announced that it was instituting a 401(k) plan and that Mr. Cheney was eligible to participate in the plan.

29.    IPDA's 401(k) plan documents define IPDA as the "Plan Administrator" and Mr. Krass as the "Plan Trustee." Plan documents also obligate IPDA to make "safe harbor" contributions to match employee contributions using a certain formula. Plan documents require

6

that safe harbor matches be deposited in a special safe harbor account established on an employee's behalf.

30.    Mr. Cheney made the maximum allowed personal contribution to the IPDA 401(k) plan out of his 2006 compensation.  However, IPDA failed to meet its 401(k) plan obligations to Mr. Cheney at least by failing to make a full safe harbor matching contribution for 2006 according to the formula stated in the plan documents.

31.    Upon information and belief, IPDA also failed to make full safe harbor matching contributions to other IPDA employees for 2006 as required in the plan documents.

32    In 2007, Mr. Cheney made periodic contributions to the IPDA 401(k) plan until he reached the maximum allowed personal contribution for the year.  However, IPDA failed to meet its 401(k) plan obligations to Mr. Cheney at least by failing to make a full safe harbor matching contribution for 2007 according to the formula stated in the plan documents.

33    Upon information and belief, IPDA failed to make full safe harbor matching contributions to other IPDA employees for 2007 as required in the plan documents.

34.    In 2008, Mr. Cheney again made periodic contributions to the to the IPDA 401(k) plan.  IPDA has made no matching contributions to Mr. Cheney's account for 2008.

F.    **Defendants' Breach of the Equity Agreement**

35.    On December 13, 2007, Mr. Krass discussed Mr. Cheney's bonus package for 2007 with Mr. Cheney.  Mr. Krass complemented Mr. Cheney on the quality of his work, stating that Mr. Cheney was performing at an "A+" level.  Mr. Krass then showed Mr. Cheney a sheet of paper that listed several figures, including Mr. Cheney's salary for the year, a cash bonus, and numbers relating to the IPDA 401(k) plan.

7

36.    During this discussion Mr. Cheney told Mr. Krass that the figures on the page indicated that IPDA had not complied with its 401(k) matching obligations for 2007 as stated in the plan papers. Mr. Cheney expressed his disappointment that IPDA was violating the 401(k) plan rules as it had the previous year.

37.    Also at the December 13 meeting, Mr. Cheney told Mr. Krass that Mr. Cheney had expected to receive equity in the company as part of his bonus package for calendar year 2007.

38.    In response, Mr. Krass told Mr. Cheney that Mr. Krass and IPDA did not intend to grant equity ownership to Mr. Cheney. When Mr. Cheney told Mr. Krass such inaction would be a breach of the Equity Agreement negotiated in 2006, Mr. Krass expressly denied the existence of any equity agreement.

39.    Later on December 13, Mr. Cheney provided Mr. Krass with a copy of the Equity Agreement the parties had reached on February 3, 2006. When Mr. Cheney handed Mr. Krass the Agreement, Mr. Krass turned it face down on the table and refused to read it. Mr. Krass stated that "no matter what" the document said, Mr. Krass "never intended" to grant Mr. Cheney equity ownership.

40.    On Friday, February 15, 2008, Mr. Cheney emailed Mr. Krass a letter stating that Mr. Krass and IPDA had breached the Equity Agreement. The letter also recounted Mr. Cheney's belief that IPDA had breached its 401(k) contribution obligations.

**G.    Defendants' Retaliation Against Mr. Cheney's Disclosure of IPDA's 401(k) Violations**

41.    On Tuesday, February 19, 2008, Mr. Krass intercepted Mr. Cheney as Mr. Cheney entered IPDA's offices for work. Mr. Krass escorted Mr. Cheney into Mr. Krass' office and called another IPDA employee in to act as a witness.

42.    Mr. Krass said he had received Mr. Cheney's letter. Mr. Krass said that Mr. Cheney was being fired for disclosing the information in the letter. Mr. Krass then confiscated Mr. Cheney's laptop computer and cell phone and handed Mr. Cheney a slip of paper with the name and phone number of Defendants' attorney. Mr. Cheney left the IPDA premises.

43.    All of Mr. Cheney's legal work product and client files remain in the possession of Defendants.

44.    Upon information and belief, Defendants terminated Mr. Cheney for making allegations that Defendants had breached their 401(k) plan obligations. The Employee Retirement Income Security Act of 1974 ("ERISA"), at 29 U.S.C. § 1140, prohibits employers like Defendants from retaliating against employees like Mr. Cheney for exposing retirement account violations.

**H.    Defendants' Violations of ERISA After Mr. Cheney's Termination**

45.    ERISA encompasses enforcement of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). After terminating Mr. Cheney, Defendants have never provided Mr. Cheney with the "COBRA" health care notice required under 29 U.S.C. § 1166.

46.    The institution holding Mr. Cheney's IPDA 401(k) funds—John Hancock USA— requires authorization from Defendants before any transfer of Mr. Cheney's 401(k) funds. On March 10, 2008, Mr. Cheney sent IPDA a written request that IPDA authorize the rollover of his

401(k) funds to a different bank. IPDA has never responded to Mr. Cheney's request, essentially freezing Mr. Cheney's 401(k) assets.

## I.    The Minimum Value of the Equity Interest Due Mr. Cheney

47.    The Equity Agreement Mr. Cheney negotiated with Defendants entitles Mr. Cheney to at least a 2.5% ownership interest in IPDA.

48.    On February 7, 2008, IPDA Director Mamolen estimated the value of IPDA at $15 million. Using Mr. Mamolen's estimate, the asset portion of the equity interest in IPDA promised to Mr. Cheney is presently worth at least $375,000.

## J.    The Current Controversy Over Mr. Cheney's Law Practice

49.    After his termination, Mr. Cheney has attempted to resume the practice of law in Washington, D.C. However, Defendants have threatened litigation if Mr. Cheney contacts the clients he served at IPDA or if he provides legal services in competition with Defendants.

50.    Upon information and belief, Defendants have taken steps to prevent clients at IPDA from knowing Mr. Cheney has departed IPDA.

51.    Mr. Cheney has attempted to resolve the competition dispute with Defendants out of court. On April 29, 2008, Mr. Cheney's counsel wrote a letter to Defendants' counsel stating that the Employment Agreement constitutes an impermissible restriction on Mr. Cheney's right to practice law. The letter also described Mr. Cheney's ethical duty to contact clients at IPDA to inform them of his departure.

52.    On May 2, 2008, counsel for Defendants replied with a letter that stated that any claim that IPDA practices law is "specious." The letter also stated that Defendants "will vigorously enforce" the restrictive covenants in the Employment Agreement.

10

53.     There exists an actual controversy between Mr. Cheney and Defendants as to whether Mr. Cheney may contact with his clients at IPDA or whether Mr. Cheney's D.C. law practice violates any enforceable agreement with Defendants.

## CLAIMS FOR RELIEF

### Count I
### (Declaratory Judgment of Attorney-Client Obligations)

54.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

55.     Under D.C. Rule of Professional Conduct 1.4 and D.C. Bar Ethics Opinion 273, Mr. Cheney has an obligation to communicate his departure from IPDA to his clients there.

56.     Upon information and belief, Defendants have taken steps to prevent clients from knowing Mr. Cheney has departed IPDA.

57.     On April 29, 2008, Mr. Cheney's counsel wrote to Defendants' counsel and asserted Mr. Cheney's right to inform clients of his departure. Mr Cheney's counsel requested a list of contact information for clients that have received legal advice from Mr. Cheney.

58.     On May 2, 2008, Defendants' counsel refused the request for contact information. Defendants' counsel wrote that any "assertion that IPD is somehow engaged in the practice of law in Florida is specious . . . IPD is not engaged by its clients to render legal services . . . " Defendants threatened litigation to prevent Mr. Cheney from contacting clients.

59.     Defendant Howard Krass is a member of the Florida Bar and is subject to the Florida Rules of Professional Conduct. IPDA Director Mamolen and other IPD employees are also attorneys. Defendants' refusal to allow Mr. Cheney to contact clients violates Florida Rules of Professional Conduct 5.6 and 5.8 and other similar rules in other jurisdictions.

11

60.     There exists an actual controversy between the parties as to Mr. Cheney's rights and responsibilities in relation to clients at IPDA.

## Count II
**(Judgment Declaring Non-Competition Paragraph of
Employment Agreement Unenforceable)**

61.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

62.     On April 29, 2008, Mr. Cheney's counsel wrote to Defendants' counsel stating that the "Non-Competition" paragraph in the Employment Agreement constitutes an impermissible restriction on Mr. Cheney's ability to practice law and violates ethical rules for attorneys.

63.     On May 2, 2008, counsel for Defendants responded that Mr. Cheney's claim that "IPD is somehow engaged in the practice of law in Florida is specious." Defendants' counsel also wrote that "IPD will vigorously enforce all the terms of its Employment Agreement with Mr. Cheney, including, without limitation, the restrictive covenants" in the "Non-Competition" paragraph.

64.     There exists an actual controversy between the parties as to the enforceability of the "Non-Competition" paragraph in the Employment Agreement.

## Count III
**(Judgment Declaring Non-Hire Paragraph of Subscription Agreement Unenforceable)**

65.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

66.     IPDA requires each client to sign a Subscription Agreement that includes a paragraph titled "Non-Hire." The paragraph states that the client shall not contract with any ex-

12

employee of IPDA within one year of the employee's departure from IPDA. The paragraph also states that the client will not contract with any ex-employee of IPDA within one year after the termination of the client's contract.

67.    Because Mr. Cheney is now an ex-employee of IPDA, he is a party with an interest implicated by the "Non-Hire" provision of the Subscription Agreement.

68.    The "Non-Hire" provision of the Subscription Agreement infringes upon Mr. Cheney's ability to practice law and the right of IPDA clients to counsel of their choice. The "Non-Hire" provision also violates ethical rules for attorneys.

69.    On May 2, 2008, counsel for Defendants stated in writing that Defendants intend to "vigorously enforce" covenants that purport to restrict Mr. Cheney's future legal employment.

70.    There exists an actual controversy between the parties as to the enforceability of the "Non-Hire" paragraph in the Subscription Agreement.

**Count IV**
**(Judgment Declaring Non-Solicitation Paragraph of**
**Employment Agreement Unenforceable)**

71.    Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

72.    The Rules of Professional Conduct in both Florida and the District of Columbia limit contractual restrictions on an attorney's right to practice law. D.C. Rule of Professional Conduct 5.6 and D.C. Bar Ethics Opinion 181 protect not only Mr. Cheney's interactions with his clients, but also his interactions with colleagues.

73.    On May 2, 2008, Defendants' counsel stated in writing that Defendants intend to "vigorously enforce" a "Non-Solicitation/Non-Hire of Employees" paragraph in the Employment Agreement against Mr. Cheney.

74.     If enforceable, the "Non-Solicitation/Non-Hire of Employees" paragraph would restrict Mr. Cheney from associating with other legal professionals and non-professionals. The paragraph would therefore infringe upon both Mr. Cheney's right to practice law and his clients' right to counsel of their choice.

75.     There exists an actual controversy between the parties as to the enforceability of the "Non-Solicitation/Non-Hire of Employees" paragraph in the Employment Agreement.

### Count V
### (Breach of Contract)

76.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

77.     Defendants entered into a contract with Mr. Cheney regarding equity ownership in IPDA.

78.     Defendants breached their contract with Mr. Cheney at least by failing to provide Mr. Cheney with an opportunity to receive equity ownership in IPDA as part of Mr. Cheney's bonus for the 2007 calendar year.

79.     As a direct and proximate result of Defendants' conduct, Mr. Cheney was and continues to be damaged. Mr. Cheney's damages significantly exceed $75,000. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of punitive damages.

### Count VI
### (Fraudulent Inducement)

80.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

81.    In January 2006, Defendants, , acting through Mr. Krass and Mr. Mamolen, interviewed Mr. Cheney for employment with IPDA.

82.    During the interview and in subsequent communications, Defendants made at least the following representations to Mr. Cheney concerning the proposed employment:

    a.    Defendants possessed a written opinion from outside counsel that the business of IPDA does not constitute the practice of law, and therefore IPDA was not subject to the legal and ethical restrictions normally applied to law firms.

    b.    Mr. Cheney would receive equity ownership in IPDA.

83.    Upon information and belief, the representations made to Mr. Cheney during recruiting were false at least because (a) Defendants did not possess a written opinion from outside counsel that the business of IPDA does not constitute the practice of law, and (b) Mr. Krass stated in December 2007 that he "never intended" to grant Mr. Cheney equity ownership when he promised the same in 2006.

84.    Defendants made the recruiting representations knowing them to be false or with reckless disregard as to their truth or falsity, with the intent to fraudulently induce Mr. Cheney to rely on them by accepting the proposed employment. The recruiting representations as to actions Defendants would take in the future were made with the present intent not to perform.

85.    The recruiting representations by Defendants were material to Mr. Cheney's decision to accept the proposed employment.

86.    Mr. Cheney reasonably relied on the recruiting representations by Defendants in deciding to accept employment with IPDA. Mr. Cheney did not know that the representations were false and had no reasonable independent means of ascertaining their truth or falsity.

15

87.     As the direct and proximate result of reliance on the fraudulent representations by Defendants, Mr. Cheney was and continues to be damaged. Mr. Cheney's damages significantly exceed $75,000. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of punitive damages.

**Count VII**
**(Promissory Estoppel)**

88.     Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

89.     In January 2006, Defendants, acting through Mr. Krass and Mr. Mamolen, interviewed Mr. Cheney for employment with IPDA.

90.     During the interview and in subsequent communications, Defendants promised Mr. Cheney equity ownership in IPDA if Mr. Cheney joined IPDA.

91.     Defendants knew or should have known that their promises would induce action and/or forbearance on the part of Mr. Cheney.

92.     Mr. Cheney relied upon the promises of Defendants to his detriment. For example, Mr. Cheney gave up a partnership track position at his law firm in reliance upon Defendants' promise of equity in IPDA.

93.     As the direct and proximate result of reliance on the promises of Defendants, Mr. Cheney was and continues to be damaged. Mr. Cheney's damages significantly exceed $75,000. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of punitive damages.

## Count VIII
### (ERISA Action for Benefits Due Under 401(k) Plan)

94.    Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

95.    Participants in IPDA's 401(k) plan are protected by ERISA, 29 U.S.C. §§ 1001 et seq.

96.    Defendants are responsible for employer contributions to IPDA's 401(k) plan. Defendants have failed to make appropriate employer contributions to IPDA's 401(k) plan on Mr. Cheney's behalf for the plan years 2006, 2007, and 2008.

97.    As a participant in IPDA's 401(k) plan, Mr. Cheney is entitled under 29 U.S.C. § 1132 to recover employer contributions due him from the plan.

98.    Mr. Cheney has been and continues to be damaged by Defendants' failure to make appropriate employer contributions to Mr. Cheney's 401(k) account. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of enhanced damages.

## Count IX
### (ERISA Action for Breach of Fiduciary Duty)

99.    Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

100.    Defendants exercise authority and control respecting the management and disposition of assets of IPDA's 401(k) plan and, therefore, are fiduciaries as that term is used in ERISA, 29 U.S.C. § 1002(21).

17

101.    Defendant Howard Krass, as trustee of IPDA's 401(k) plan, is a fiduciary as that term is used in ERISA, 29 U.S.C. § 1002(21).

102    As fiduciaries, Defendants have a duty under at least 29 U.S.C. § 1104 to ensure that contributions to IPDA's 401(k) plan are made in the correct amount.

103.    Defendants breached their fiduciary duties by failing to ensure that contributions to IPDA's 401(k) plan were made in the correct amount for 2006, 2007, and 2008.

104.    As fiduciaries, Defendants have a duty under at least 29 U.S.C. § 1106 to refrain from self dealing at it relates to the assets of IPDA's 401(k) plan.

105.    Defendants breached their fiduciary duties at least by mischaracterizing as an employer match funds that are rightly characterized as employee compensation. Upon information and belief, Defendants intentionally realized a self-dealing benefit in the form of a tax benefit, accrued interest, or other benefit as a result of the mischaracterization.

106.    Upon information and belief, further investigation in this lawsuit will reveal other self dealing by Defendants in relation to IPDA's 401(k) plan.

107.    Under 29 U.S.C. § 1109, Defendant Howard Krass is personally liable for breaching his fiduciary duties to the IPDA 401(k) plan.

108.    Mr. Cheney has been and continues to be damaged by the Defendants' fiduciary breaches. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of enhanced damages.

18

## Count X
### (ERISA Action for Transfer of Plan Assets)

109.    Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

110.    As a participant in IPDA's 401(k) plan, Mr. Cheney is entitled under 29 U.S.C. § 1132 to enforce his rights under the plan. One right afforded to Mr. Cheney under the plan is the right to roll over his assets to another financial institution after departing IPDA.

111.    On March 10, 2008, Mr. Cheney sent Defendants a written request that IPDA authorize the transfer of his 401(k) funds to a different bank. Defendants have never responded to Mr. Cheney's request, essentially freezing Mr. Cheney's assets.

112.    Plaintiff Cheney has been and continues to be damaged by Defendants' failure to authorize the transfer of his 401(k) assets. Mr. Cheney is entitled to recover actual damages, interest, attorneys' fees, and costs from Defendants. Because of the willful and malicious nature of Defendants' conduct, Mr. Cheney is also entitled to an award of enhanced damages.

## Count XI
### (ERISA Action for Statutory COBRA Damages)

113.    Plaintiff Cheney repeats and realleges the foregoing paragraphs as though fully alleged herein.

114.    Defendants failed to provide the notice required under 29 U.S.C. § 1166 of Mr. Cheney's right to continued coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

115.    Plaintiff Cheney has been and continues to be damaged by Defendants' failure to provide the COBRA notice. Mr. Cheney is entitled to recover actual damages, statutory damages, interest, attorneys' fees, and costs from Defendants for Defendants' failure to provide

19

the COBRA notice. Because of the willful and malicious nature of Defendants' conduct, Mr.
Cheney is also entitled to an award of enhanced damages.

### Prayer for Relief

WHEREFORE, Plaintiff Clark S. Cheney respectfully prays that this honorable Court
enter judgment in his favor and against Defendants as follows:

(a) Entry of a judgment declaring that the "Non-Competition" paragraph of the Employment
Agreement is unenforceable;

(b) Entry of a judgment declaring that the "Non-Solicitation/Non-Hire of Employees"
paragraph of the Employment Agreement is unenforceable;

(c) Entry of a judgment declaring that the "Non-Hire" paragraph of the Subscription
Agreement is unenforceable;

(d) Entry of a judgment declaring that:

1) Plaintiff Clark Cheney may contact all clients who have received legal analysis from
him during his employment at IPD Analytics, LLC, and

   i.   inform the clients of his departure;

   ii.  inform the clients that the "Non-Hire" paragraph of their Subscription
        Agreement with Defendants is unenforceable as applied to retaining Clark
        Cheney for legal advice;

   iii. provide the clients with a copy of the Court's judgment;

   iv.  request a response from clients about whether they wish to continue to receive
        legal analysis from Clark Cheney;

2) Plaintiff Cheney may provide a copy of the Court's judgment to any employee or past
employee of IPD Analytics, LLC, and may:

      i.     seek assistance from the employee in gathering client files and other necessary information for clients that elect to continue to receive legal analysis from Plaintiff;

     ii.    solicit any professional or non-professional employee or past employee of IPD Analytics, LLC, to join Plaintiff Cheney in his legal practice;

3) Defendants IPD Analytics, LLC, Intellectual Property Development, Inc., and Howard B. Krass, shall

    iii.   within three business days of the Court's judgment, provide Plaintiff Cheney with a list of all contact information for all clients who have received legal analysis from Plaintiff Cheney during his employment at IPD Analytics, LLC, organized by the service to which the client has subscribed. The list shall identify the client's business name, the name of the person at the client's business responsible for the client account, the names of all persons on the client account and which report(s) each person is authorized to receive, the names of all other persons related to the client account, the client's mailing address, the client's facsimile number, and email addresses, direct telephone numbers, and any telephone extensions for each person named on the account;

    iv.   turn over to Plaintiff Cheney all client files for clients that elect to continue their relationship with Mr. Cheney within three business days of receiving written notice of such election. The files shall include copies of all written legal analysis the client received, all relevant documents upon which such legal analysis is based, and any other files reasonably necessary to continue servicing the client; and

      v.    within three business days of the Court's judgment, turn over to Plaintiff Cheney his work product files relating to any legal analysis the client received from Plaintiff Cheney, including all court documents that Plaintiff Cheney used in formulating his legal analysis;

(e) Entry of a judgment in Plaintiff's favor and against Defendants for breach of contract, in an amount to be determined at trial;

(f) Entry of a judgment in Plaintiff's favor and against Defendants for fraudulent inducement, in an amount to be determined at trial;

(g) Entry of a judgment in Plaintiff's favor and against Defendants for promissory estoppel, in an amount to be determined at trial;

(h) Entry of a judgment in Plaintiff's favor and against Defendants for benefits due him under IPDA's 401(k) plan, in an amount to be determined at trial;

(i) Entry of a judgment ordering Defendants collectively and Howard B. Krass personally to restore to Plaintiff's 401(k) account any profits Defendants made through use of assets properly due Plaintiff's 401(k) account;

(j) Entry of an injunction removing Howard B. Krass as the trustee of the IPDA 401(k) plan;

(k) Entry of a judgment in Plaintiff's favor and against Defendants for damages resulting from Defendants' failure to authorize Mr. Cheney's 401(k) rollover request, in an amount to be determined at trial;

(l) Entry of an injunction ordering Defendants to authorize Mr. Cheney's 401(k) rollover request;

(m) Any equitable or remedial relief the Court deems appropriate in consequence of Defendants' fiduciary breaches to IPDA's 401(k) plan;

22

(n) Entry of a judgment in Plaintiff's favor and against Defendants for actual damages resulting from Defendants' failure to provide notice to Plaintiff of Plaintiff's COBRA rights, as well as statutory damages for the notice failure, in an amount to be determined at trial;

(o) An award to Plaintiff for compensatory damages in an amount to be determined at trial;

(p) An award to Plaintiff of punitive damages in an amount to be determined at trial, but in any event not less than ten times the amount of Plaintiff's compensatory damages;

(q) An award to Plaintiff of interest, attorneys fees, and costs; and

(r) All other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff Clark S. Cheney demands a trial by jury of this action

Dated June _18_, 2008

Respectfully submitted,

Clark S. Cheney, DC Bar No. 491919
Law Office of Clark S. Cheney
517 F Street, NE
Washington, DC  20002
(202) 253-7195

*Pro se Plaintiff*

23

D
08 -1044
JDB

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Clark S. CHENEY                    1/001 | IPD Analytics, LLC<br>Intellectual Property Development, Inc<br>Howard Benjamin KRASS |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____11001_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Miami-Dade, FL___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Clark S. Cheney
517 F Street, NE
Washington, DC  20002
(202) 253-7195

Case: 1:08-cv-01044
Assigned To : Bates, John D.
Assign. Date : 6/18/2008
Description: TRO/PI

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U S Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question
(U S Government Not a Party)

◉ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ◉ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| O **G. Habeas Corpus/ 2255** | O **H. Employment Discrimination** | O **I. FOIA/PRIVACY ACT** | O **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O **K. Labor/ERISA (non-employment)** | O **L. Other Civil Rights (non-employment)** | O **M. Contract** | O **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☒ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Disputes arising from terminated employment, including declaratory judgments, breach of contract (28 USC 1332) and ERISA violations (29 USC 1132)

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]   Check YES only if demanded in complaint JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY** *s.f.*   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form

DATE   June 18, 2008   SIGNATURE OF ATTORNEY OF RECORD   *Clark J. Cheney*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.