UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CLARK S. CHENEY,                                    Case No.: 1:08-cv-01044-JDB

      Plaintiff,

v.

IPD ANALYTICS, L.L.C.,
INTELLECTUAL PROPERTY
DEVELOPMENT, INC., and
HOWARD BENJAMIN KRASS,

      Defendants.
_____

_____

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF
CHENEY'S MOTION FOR PRELIMINARY INJUNCTION**

_____

## **TABLE OF CONTENTS**
**PAGE(S)**

TABLE OF AUTHORITIES............................................................. iii

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF CHENEY'S
    MOTION FOR PRELIMINARY INJUNCTION............................... 1

1.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS
    AND VENUE IS IMPROPER................................................ 1

2.    THERE WAS NO ATTORNEY–CLIENT RELATIONSHIP BETWEEN MR.
    CHENEY AND THE SUBSCRIBERS TO THE REPORTS OF IPD
    ANALYTICS............................................................. 1

    a.    The Business of IPD Analytics.................................... 1

    b.    Mr. Cheney Did Not Practice Law in Florida......................... 3

3.    MR. CHENEY'S ARGUMENTS FOR A PRELIMINARY INJUNCTION
    REST ON HIS ASSERTION THAT HE WAS PRACTICING LAW IN
    FLORIDA............................................................. 4

    a.    Likelihood That Mr. Cheney Will Prevail on the Merits................ 4

    b.    Prospect of Irreparable Injury if Requested Relief Is Withheld.......... 8

    c.    Whether the Requested Injunction Would Harm IPD Analytics.......... 9

    d.    The Public Interest............................................. 11

CONCLUSION......................................................... 12

CERTIFICATE OF SERVICE............................................. 13

# **TABLE OF AUTHORITIES**

**CASES**                                                   **PAGE(S)**

\**Florida Bar v. Am. Legal & Business Forms, Inc.*,
    274 So.2d 225 (Fla. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

\**Florida Bar v. Town*,
    174 So.2d 395 (Fla. 1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

\**Henao v. Prof'l Shoe Repair, Inc.*,
    929 So.2d 723 (Fla. 5th DCA 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

\**Lentek Int'l, Inc. v. Greenspoon, Marder*,
    377 B.R. 396 (M.D. Fla. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

\**North Am. Products Corp. v. Moore*,
    196 F.Supp.2d 1217 (M.D. Fla. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

\**Variable Annuity Life Ins. Co. v. Hausinger*,
    927 So.2d 243 (Fla. 2d DCA 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Auto Club Affiliates, Inc. v. Donahey*,
    281 So.2d 239 (Fla. 2d DCA 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Blasco v. Gulf Auto Holding, Inc.*,
    707 So.2d 858 (Fla. 2d DCA 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ekstrom v. Value Health, Inc.*,
    68 F.3d 1391 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Red Sage Ltd. P'ship v. Despa Deutche Sparkassen Immobilien-Anlage-Gasellschaft*,
    254 F.3d 1120, 1131 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATUTES**

Florida Statues, § 542.335(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Florida Statutes § 454.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

**OTHER AUTHORITIES**

Rules Regulating the Florida Bar,
       Rules of Professional Conduct, Rule 4-5.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF CHENEY'S MOTION FOR PRELIMINARY INJUNCTION**

Defendants, IPD Analytics, L.L.C. ("IPD Analytics"), Intellectual Property Development, Inc., and Howard Benjamin Krass, file this memorandum in opposition to plaintiff Cheney's motion for preliminary injunction.

**1.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS AND VENUE IS IMPROPER**

This Court lacks personal jurisdiction over the defendants and venue is improper, as set forth in Defendants' Motion to Dismiss or Transfer Pursuant to the Contractual Forum Selection Clause, for Lack of Personal Jurisdiction, or Improper Venue (DE-8).

**2.   THERE WAS NO ATTORNEY–CLIENT RELATIONSHIP BETWEEN MR. CHENEY AND THE SUBSCRIBERS TO THE REPORTS OF IPD ANALYTICS**

   **a.   The Business of IPD Analytics**

The foundation of Mr. Cheney's motion for a preliminary injunction is his factual assertion that the business of defendant, IPD Analytics, is the practice of law, and that while he was acting as an employee of IPD Analytics, he established an attorney-client relationship with the subscribers to its published reports.

IPD Analytics is in the business of publishing and selling, primarily to institutional investors, subscriptions to research reports on the status of patent litigation involving public companies. Krass Decl., ¶ 1, Ex. A hereto. Such research reports are commonly known as Wall Street newsletters. *Id*. IPD Analytics sells subscriptions to three different newsletters, one related to the pharmaceutical and biotech industry, one related to the medical device

1

industry, and one related to the technology, media, and telecom industry. *Id*. A subscriber to an IPD Analytics' newsletter receives the same publication as all other subscribers to that newsletter. Subscribers to IPD Analytics' newsletters may call IPD Analytics personnel in Florida with questions about what is reported in the newsletter, however the information they are given is not confidential or discrete as to a calling subscriber, but is given to any and all calling subscribers. There are multiple subscribers to the published newsletters of IPD Analytics, some of which compete with each other for investment capital. *Id*.

Neither IPD Analytics nor its employees have an attorney-client relationship with its subscribers. This is expressly acknowledged in the Subscription Agreement each subscriber must sign to obtain the service. That Subscription Agreement provides:

> IPD Analytics, LLC ("IPD Analytics") offers investment professionals research and reports related to patent litigation. IPD Analytics shall provide its basic services to the undersigned according to the terms and conditions listed below.
>
> **Terms and Conditions**
>
> 1.  <u>Subscription</u>: The undersigned ("Subscriber") agrees to become a subscriber to IPD Analytics Patent Litigation Monitor service . . . . The Service shall consist of research and reports related to ongoing patent litigation . . . . The reports shall cover cases chosen at IPD Analytics' discretion. . . .
>
>         \*        \*        \*
>
> 3.  <u>No Attorney-Client Relationship</u>: Subscriber hereby acknowledges and agrees that none of IPD Analytics' activities create or constitute any attorney-client relationship between IPD Analytics, its principals, employees, shareholders, officers, directors, members, agents and/or affiliates ("IPDA") and the Subscriber. Subscriber understands and acknowledges that the research and reports it will be receiving pursuant to the Service will also be provided to other subscribers to the Service.

Ex. 1 to Krass Decl., Ex. "A" hereto.

### b.     Mr. Cheney Did Not Practice Law in Florida

The common thread running through Mr. Cheney's memorandum in support of his motion is his assertion that as an employee of IPD Analytics, in Florida, he established an attorney-client relationship with its subscribers. *See, e.g.,* Mem. Supp. Pl.'s Mot. for Prelim. Inj. (DE-2) at 3 (arguing Mr. Cheney's need to "advise the client whether the lawyer will be able to continue to represent it"); *id*. at 6 ("'the freedom of clients to choose a lawyer'"); at 7 ("public policy of allowing clients to engage counsel of their choice"); at 12 ("exercis[ing] their right to choose different counsel"); at 13 (injunctive relief would allow Mr. Cheney to solicit IPD Analytics' subscribers to be his clients).

However, Mr. Cheney never practiced law in Florida, as an employee of IPD Analytics, or otherwise. First, Mr. Cheney is not, and never has been, a member of the Florida Bar, a necessary prerequisite to practicing law there. Rules Regulating the Florida Bar, Rules of Professional Conduct, Rule 4-5.5. If Mr. Cheney was practicing law in Florida, as he asserts, he would have been committing a felony.[1] Florida Statutes § 454.23.

---

[1] Mr. Cheney agreed that his Employment Agreement with IPD Analytics "shall be governed by and construed in accordance with the internal laws of the State of Florida without regard to conflict of law principles." Employment Agreement, p. 3, § 1.8, Ex. 2 to Krass Decl., Ex. "A" hereto. The D.C. Circuit "has adopted the general rule 'that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified.'" *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995). Here, it stands to reason that Florida law would apply even without the choice of law provision, since Mr. Cheney bases his motion on his claim that he was practicing law in Florida.

3

Furthermore, whether a lawyer-client relationship exists "'hinges upon the client's' reasonable 'belief that he is *consulting* a lawyer in that capacity and his *manifested intention* is to seek professional legal advice.'" *Lentek Int'l, Inc. v. Greenspoon, Marder,* 377 B.R. 396, 400 (M.D. Fla. 2007) (emphasis by court). There could be no such reasonable belief by the subscribers to IPD Analytics' reports, given their acknowledgment on the face of their Subscription Agreement that there is "No Attorney-Client Relationship" between them and IPD Analytics or its employees, including Mr. Cheney. *See* full text, *supra*, p. 2.

Neither IPD Analytics, nor its employees, represented IPD Analytics' subscribers before the courts, or gave those subscribers legal advice and counsel as to their rights and obligations under the law — the basic definition of practicing law in Florida. *Florida Bar v. Town*, 174 So.2d 395, 396-97 (Fla. 1965); *Florida Bar v. Am. Legal & Business Forms, Inc.*, 274 So.2d 225, 228 (Fla. 1973). Subscribers to the publications of IPD Analytics are institutional investors seeking information to use in their business, not legal advice and counsel as to their rights and obligations under the law.

3. **MR. CHENEY'S ARGUMENTS FOR A PRELIMINARY INJUNCTION REST ON HIS ASSERTION THAT HE WAS PRACTICING LAW IN FLORIDA**

   a. **Likelihood That Mr. Cheney Will Prevail on the Merits**

Mr. Cheney argues that there is a likelihood that he will prevail on the merits of his claims, because his non-competition covenant with his former employer "'limits the freedom of clients to choose a lawyer,'" and prevents him from practicing law. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (DE-2), pp. 5-6.

However, Mr. Cheney is practicing law. He so states in his memorandum to the Court. Mem. in Supp. of Mot. for Prelim. Inj., *id*. at 8 ("Plaintiff Cheney is engaged in the practice of law in Washington, D.C. . . . ."). As Mr. Cheney knows, IPD Analytics does not object to his practicing law. IPD Analytics objects to Mr. Cheney engaging in a competing business of publication and subscription sales of Wall Street newsletters on patent litigation involving public companies, during the limited period during which he agreed not to do so.

The charade behind Mr. Cheney's motion is exposed by his own argument. This is not about Mr. Cheney's ability to practice law, but his blatant effort to compete with his former employer during the limited period (one year) he agreed not to do so. Mr. Cheney argues:

> The clients for whom the parties compete are stock traders whose prospects rise and fall from minute to minute. The value of the information Defendants provide diminishes exponentially as it rapidly permeates the market.

Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (DE-2), p. 9.

Mr. Cheney's requested relief also exposes his charade concerning his desire to practice law in the District of Columbia. Mr. Cheney asks this Court to issue a mandatory injunction giving IPD Analytics 3 days to provide Mr. Cheney with contact information for the stock traders who subscribed to IPD Analytics' service and received reports containing content supplied by him while acting as its employee. *Id*., p. 13. *None* of those subscribers are located in the District of Columbia. Krass Decl., ¶ 2, Ex. A hereto.

5

In his relentless attempt to link his non-compete covenant to his ability to practice law, Mr. Cheney stretches what he agreed not to do, by omitting words from his covenant and replacing them with ellipses. Where the covenant provides that Mr. Cheney will not compete with the business of IPD Analytics, by providing "research and/or analysis, *for investment purposes*, of pending litigation and/or intellectual property issues," Mr. Cheney argues that the covenant "would essentially prevent Mr. Cheney from earning a livelihood by restricting him from providing 'analysis . . . of pending litigation and/or intellectual property issues.'" Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., p. 5 (ellipsis by Mr. Cheney) (emphasis of omitted language added here).

Mr. Cheney also challenges the geographical scope of the non-competition clause because although he "is engaged in the practice of law in Washington, D.C., more than one thousand miles from the Defendants," he argues that his agreement restricts him from competing "'in any country in the world.'" *Id*., pp. 8-9.

But Mr. Cheney again stretches the language of his covenant which does not "restrain Mr. Cheney from competing 'in any State of the United States, or in any country in the world.'" Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., p. 8. Mr. Cheney places a period after the word "world," while the actual sentence in the covenant goes on, as follows:

> . . . Employee will not, directly or indirectly, in any State of the United States, or in any country in the world *where Company engages or proposes to engage in Business as of the date of the termination of Employee's employment by the Company* . . .

Employment Agreement, p. 2, § 1.4, Ex. 2 to Krass Decl., Ex. "A" hereto (emphasis added).

6

IPD Analytics' market is not defined by where it is located, but by where its subscribers and potential subscribers can be found. Krass Decl., ¶ 4, Ex. A hereto. ] *See Auto Club Affiliates, Inc. v. Donahey*, 281 So.2d 239, 241-42 (Fla. 2d DCA 1973) (observing the need for worldwide restrictive covenants when called for by the facts of the case).

Mr. Cheney also challenges the "non-solicitation" covenant in his employment contract, in which he agreed for a limited period not to solicit for employment, persons employed by IPD Analytics. He also challenges the "non-hire" provision in the Subscription Agreement in which subscribers agree for a limited period not to hire the employees of IPD Analytics. Both of these provisions are reasonable and enforceable. *Henao v. Prof'l Shoe Repair, Inc.*, 929 So.2d 723, 727 (Fla. 5th DCA 2006) (observing that the Florida statute providing for enforcement of non-competition agreements contains a comprehensive framework, within which "the term 'restrictive covenants' includes *all* contractual restrictions upon competition, such as noncompetition/nonsolicitation agreements, confidentiality agreements, exclusive dealing agreements . . ." and "is broadly 'aimed at making enforcement of bona fide restrictive covenants easier and more certain.'"); *Blasco v. Gulf Auto Holding, Inc.*, 707 So.2d 858 (Fla. 2d DCA 1998) (finding former employee's agreement not to solicit or influence other employees furthered the legitimate business interests of promoting productivity and maintaining competent personnel).[2/]

---

[2/] Although Mr. Cheney agreed that this matter would be governed by Florida law, the law of the District of Columbia would yield the same result. "In the District of Columbia, covenants restricting competition are valid if ancillary to some other legitimate business interest." *Red Sage Ltd. P'ship v. Despa Deutche Sparkassen Immobilien-Anlage-Gasellschaft*, 254 F.3d 1120, 1131 (D.C. Cir. 2001).

### b. Prospect of Irreparable Injury if Requested Relief Is Withheld

Again, Mr. Cheney's "irreparable harm" argument hangs on his assertion that, while working for IPD Analytics in Florida, he had an attorney-client relationship with its subscribers. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (DE-2), pp. 9-11. Mr. Cheney cites the Rules of Professional Conduct for lawyers in arguing that he is obligated to inform "his clients of his departure from Defendants and of his new location and business." *Id*., p. 9. Mr. Cheney cites a legal ethics opinion that a "'client's decision on representation may well be affected by the attorney's unexplained failure to communicate regarding his or her departure.'" *Id*., p. 10.

Mr. Cheney argues that he "has spent years (mostly prior to his employment by Defendants) developing expertise in intellectual property law," and that without the injunctive relief he seeks he will be preventing from earning his livelihood. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., p. 5 (DE-2). Again, IPD Analytics has no objection to Mr. Cheney earning his livelihood by practicing law, only to his engaging in a competing business publishing and selling subscriptions to Wall Street newsletters on patent litigation involving public companies, during the one year he has contracted not to do so, five months of which have already elapsed.

Mr. Cheney also argues that IPD Analytics' subscribers are irreparably harmed by their inability to hire him for the limited period proscribed in their subscription agreements. *Id*., p. 7. In furtherance of this argument, Mr. Cheney asserts that after his departure from IPD Analytics, he received a call from an unidentified analyst at Highline Capital, an IPD

8

Analytics' subscriber. Cheney says this subscriber thought Cheney was still employed by IPD Analytics, and was calling him for "legal advice" concerning one of its subscription reports. *Id.*, p. 11.

Although Mr. Cheney does not identify the caller, the underlying foundation for his argument that there was an attorney-client relationship between IPD Analytics and Highline Capital — is demolished by the Subscription Agreement and the affidavit from the Highline Capital Chief Operating Officer stating that while Highline Capital is a subscriber to the patent litigation monitor IPD Analytics publishes "[n]either IPD Analytics . . ., nor any of its employees, represent Highline Capital as an attorney," and that "Highline Capital does not contact IPD Analytics . . ., or its employees, for legal advice." Singer Aff., ¶¶ 2, 3, Ex. "B" hereto.

Moreover, IPD Analytics' newsletters do not identify the analysts who contribute content to them. While subscribers do call IPD Analytics with questions about the newsletters, in the five months since Mr. Cheney left the employ of IPD Analytics no subscriber to any of its newsletters has raised any concerns about whether Mr. Cheney is still an employee of IPD Analytics, or is still contributing to its newsletters. Krass Decl., ¶ 12, Ex. "A" hereto.

    **c.**    **Whether the Requested Injunction Would Harm IPD Analytics**

Mr. Cheney argues that the requested injunction "would bring relatively little (if any) harm to Defendants," again basing this argument on the subscribers of IPD Analytics being

9

able to make a "decision about their choice of counsel" and to "exercise their right to choose different counsel." Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., pp. 11-12 (DE-2).

The harm that would befall IPD Analytics if the requested injunction were entered, is evident from the relief Mr. Cheney seeks. Mr. Cheney asks that IPD Analytics be required to turn over a list of customers, and for the Court to approve his solicitation of those customers to buy the same product from him instead of IPD Analytics. Mr. Cheney also asks that IPD Analytics be compelled to reveal which subscribers buy which of the three reports it publishes so that he will be able to market to the specific requirements of each potential customer. Mr. Cheney asks the Court to give him permission to provide a copy of the preliminary injunction to all past and present employees of IPD Analytics, and permit him to solicit those employees to join Mr. Cheney "in his legal practice," which he describes as the business of publishing the same subscription research reports as IPD Analytics. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., p. 13 (DE-2). IPD Analytics has devoted considerable resources over a period of years building its subscriber base and training its analysts. Krass Decl., ¶ 4, Ex. "A" hereto.

IPD Analytics' subscriber list and subscriber profile information regarding which report each subscriber subscribes to constitutes non-public confidential proprietary trade secret information developed over a period of years. Krass Decl., ¶ 4, Ex. A hereto. IPD Analytics' methods and processes, including its specialized training of analysts, is also not publicly known. *Id*. Mr. Cheney has had about two years of on-the-job training which included education on portfolio management, investment theory, hedge theory, and the

10

institutional investment business in general — all important to what institutional investors want in a Wall Street newsletter. He also received continuous training in the specialized writing of a Wall Street newsletter that is designed to make the newsletter desirable to an institutional investor, in style and substance. *Id*.

Moreover, under the well-developed law of Florida (which Mr. Cheney agreed would govern here, *infra*, p. 3, n. 1), the harm that would befall IPD Analytics is presumed as a matter of law. Florida Statues, § 542.335(j); *Variable Annuity Life Ins. Co. v. Hausinger*, 927 So.2d 243, 245 (Fla. 2d DCA 2006) ("... the harm presumed under the statute includes the potential damages to [employer's] long-standing relationships with its customers and the protection of confidential client information."); *North Am. Products Corp. v. Moore*, 196 F.Supp.2d 1217, 1230-31 (M.D. Fla. 2002) (observing that harm relates to employer's ability to "maintain[]long-standing relationships and preserv[e] the goodwill of a company built up over the course of years of doing business. . . .").

### d.    The Public Interest

Again, Mr. Cheney bases his argument on the fiction that there was an attorney-client relationship between him and IPD Analytics' subscribers while he was employed in Florida. Mr. Cheney argues that his "motion directly implicates an important public interest: the right of a client to have legal counsel of her choice," and that the non-competition clause in his employment contract is "injurious to the public interest" because it infringes "on a client's choice of counsel." Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. (DE-2), p. 12.

Again, if there had been an attorney-client relationship between Mr. Cheney and IPD Analytics' subscribers while he was employed in Florida, Mr. Cheney committed a felony by practicing law without a license. Florida Statutes § 454.23. Of course, Mr. Cheney was not committing a felony because he was not practicing law, nor is his motion about practicing law. It is about Mr. Cheney's desire to go into the business of his former employer, IPD Analytics, during the period in which he agreed not to do so.

## CONCLUSION

The Court lacks personal jurisdiction over the defendants, and venue in the District of Columbia is improper. *See* Defendants' Motion to Dismiss or Transfer Pursuant to the Contractual Forum Selection Clause, for Lack of Personal Jurisdiction, or Improper Venue (DE-8).

If this Court finds personal jurisdiction over the defendants, however, and proper venue, in the District of Columbia, and reaches the merits of Mr. Cheney's motion for preliminary injunction, that motion should be denied in all respects.

Dated: July 7, 2008                                     Respectfully submitted,

                                              EPSTEIN BECKER & GREEN, P.C.
                                              1227 25th Street, N.W., Suite 700
                                              Washington, District of Columbia 20037
                                              Telephone: (202) 861-0900
                                              Telefax: (202) 296-2882
                                              By:    /s/ Steven M. Umin
                                                   Steven M. Umin, Esq.
                                                   D.C. Bar Number 47985
                                                   sumin@ebglaw.com
                                                   Julianna S. Gonen, Esq.
                                                   D.C. Bar Number 488759

jgonen@ebglaw.com

RICHARD & RICHARD, P.A.
825 Brickell Bay Drive
Tower III - Suite 1748
Miami, Florida 33131
Telephone: (305) 374-6688
Fax: (305) 374-0384
By:   /s/ Dennis Richard
   Dennis Richard, Esq.
   dennis@richardandrichard.com
   (*Pro Hac Vice* Admission
   Florida Bar Number 148730)

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 7th day of July, 2008, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Clark S. Cheney, Esq.
Law Office of Clark S. Cheney
*Pro Se Plaintiff*
517 F Street, N.E.
Washington, D.C. 2002
Telephone: (202) 253-7195
**Via U.S. Mail**

   /s/ Dennis Richard
   Dennis Richard, Esq.

H:\IPD Analytics\IPD-Cheney\Pleadings\memo in opp to mpi_mtd.wpd

STATE OF NEW YORK          :
                           : ss.
COUNTY OF NEW YORK         :

## AFFIDAVIT OF HOWARD SINGER

BEFORE ME, personally appeared, HOWARD SINGER, who, being known by me and after being first duly sworn, deposes and states as follows:

1. My name is Howard Singer. I am the Chief Operating Officer of Highline Capital Management, LLC, which is an investment advisory firm.

2. Highline Capital is a subscriber to the IPD Analytics Tech/Media/Telecom Patent Litigation Monitor, published by IPD Analytics, LLC.

3. Neither IPD Analytics, LLC, nor any of its employees, represent Highline Capital as an attorney. Highline Capital does not contact IPD Analytics, LLC, or its employees, for legal advice.

FURTHER AFFIANT SAYETH NAUGHT.

_____
HOWARD SINGER

BEFORE ME personally appeared HOWARD SINGER who is personally known to me and who did take an oath that he freely and voluntarily executed the foregoing and who expressed therein that the same is true and correct on this 2nd day of July, 2008.

MELISSA P. FRIED
NOTARY PUBLIC, State of New York
No. 01FR6062912
Qualified in Richmond County
Commission Expires 08/20/2009

My Commission Expires: _____
Notary Public - State of New York

Melissa Fried
Printed name of Notary

H:\IPD Analytics\IPD-Cheney\Pleadings\affidavit of jacob doft_mtd.wpd     EXHIBIT