RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

2008 JUL 14 PM

FILING DEPOSITORY

CLERK
US DISTRICT & BANKRUPTCY
COURT

2008 JUL 14 PM 4: 49

RECEIVED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Clark S. CHENEY,

    Plaintiff,

        v.

IPD ANALYTICS, LLC, *et al.*,

    Defendants.

Case No. 1:08-cv-01044-JDB

## PLAINTIFF'S REPLY MEMORANDUM SUPPORTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Local Rules of Civil Procedure 7(d), Plaintiff Clark S. Cheney respectfully submits this reply memorandum to rebut Defendants' opposition memorandum.

**Table of Contents**

Table of Authorities ............................................................................................................................. iii

I.   Defendants Have Not Overcome Mr. Cheney's Strong Showing That He Is
     Likely to Succeed on the Merits ................................................................................................ 1

     A. This Court Has Personal Jurisdiction Over All Defendants and
        Venue Is Proper in This District ........................................................................................ 1

     B. The Employment Agreement and Subscription Agreements Are Unenforceable ............ 1

         1. Defendants Are Engaged in the Practice of Law .......................................................... 1

         2. Defendants Do Not Dispute That If the Business Practices at Issue
            Are the Practice of Law, then the Restraints on Trade in the
            Employment and Subscription Agreements Are Unenforceable ................................... 4

         3. The Restraints on Trade in the Employment Agreement and Subscription
            Agreement Are Unenforceable for Overbreadth .......................................................... 5

         4. D.C. Law Applies, and It Will Not Enforce the Restraints on Trade
            in the Employment and Subscription Agreements ........................................................ 6

         5. Defendants' Argument that Mr. Cheney Committed a Felony in Florida Is
            Untrue and Irrelevant .................................................................................................... 7

II.  Mr. Cheney and His Clients Will Be Irreparably Harmed Without Immediate Relief ......... 8

III. The Balance of Hardships Tips in Favor of Allowing Plaintiff Cheney to Contact His Clients ........ 10

IV.  Defendants Fail to Identify Any Public Interest Supporting Their Position ...................... 11

V.   Because Defendants Have Failed to Propose Any Other Form of Relief,
     Mr. Cheney's Proposed Relief Should Be Granted. ................................................................ 11

## Table of Authorities

### Cases

Bray v. Brooks, 41 S.W.3d 7, 13 (Mo. App. W.D. 2001) .......................................................... 9

Faretta v. California, 422 U.S. 806, 834 (1975) .................................................................... 6

Florida Bar v. Am. Legal & Business Forms, Inc., 274 So.2d 225, 228 (Fla. 1973) ................... 3

Florida Bar v. Town, 174 So.2d 395, 397 (Fla. 1965) ............................................................ 3

Fowler v. Wirtz, 236 F.Supp. 22, 31-32 (D.C. Fla. 1964) ....................................................... 3

Illinois v. Allen, 397 U.S. 337, 350-351 (1970) .................................................................... 6

*In re Harris, 152 B.R. 440 (Bkrtcy. W.D. Pa. 1993) ............................................................. 9

*Jacobsen v. Oliver, 201 F.Supp.2d 93 (D. DC. 2002) .......................................................... 3

Mbakpuo v. Ekeanyanwu, 738 A.2d 776, 783 (D.C. 1999) .................................................... 8

*Neuman v. Akman, 715 A.2d 127, 130-31 (D.C. 1998) .................................................... 6, 11

Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev., 963 F.Supp. 1, 5 (D.D.C. 1997) ............. 8

*Sperry v. Florida, 373 U.S. 379, 382-83 (1963) ................................................................... 2

Wright v. Sony Pictures Entertainment, Inc., 394 F.Supp.2d 27, 31-32 (D. D.C. 2005) ............ 6

### Rules

*D.C. App. R. 49(b)(2) ...................................................................................................... 3

### Treatises

*Restatement (Second) of Contracts, §188 ....................................................................... 6, 11

### Ethics Opinions

Legal Ethics Comm. of the D.C. Bar, Op. 181 (1987) ............................................................ 6

*Legal Ethics Comm. of the D.C. Bar, Op. 221 (1991) .................................................. 8, 10, 11

Legal Ethics Comm. of the D.C. Bar, Op. 273 (1997) ........................................................... 10

Legal Ethics Comm. of the D.C. Bar, Op. 333 (1991) ........................................................... 11

### Rules of Professional Conduct

D.C. R. of Prof. Conduct 1.4 ............................................................................................. 10

D.C. R. of Prof. Conduct 5.6 .............................................................................................. 6

D.C. R. Prof. Conduct 1.8(g)(1) .......................................................................................... 8

D.C. R. Prof. Conduct 8.4(g) .............................................................................................. 7

Fla. R. Prof. Conduct 4-1.8(h) ............................................................................................ 8

Fla. R. Prof. Conduct 4-3.4 ................................................................................................ 7

Fla. R. Prof. Conduct 4-5.5(c) ............................................................................................ 7

I.    **Defendants Have Not Overcome Mr. Cheney's Strong Showing That He Is Likely to Succeed on the Merits**

A.    **This Court Has Personal Jurisdiction Over All Defendants and Venue Is Proper in This District**

Defendants' contend that Mr. Cheney is unlikely to succeed on his claims because this Court lacks personal jurisdiction over Defendants and because this Court is an improper venue for this lawsuit. As set forth in Plaintiff's opposition to Defendant's motion to dismiss, filed concurrently with this brief, this Court has personal jurisdiction over all defendants and venue is proper in this District.

B.    **The Employment Agreement and Subscription Agreements Are Unenforceable**

Defendants twice characterize Mr. Cheney's preliminary injunction motion as a "charade," apparently implying that Mr. Cheney is somehow trying to disguise the fact that he intends to compete with the Defendants. (See Def. Opp. Prelim. Inj. (DE 9) at p. 5.) Mr. Cheney has attempted no such subterfuge. Mr. Cheney frankly disclosed his intention to compete with the Defendants (1) prior to this litigation, (2) in his Complaint, and (3) when requesting a preliminary injunction. Mr. Cheney has no reason to hide his intentions because he cannot legally be restrained from competition in the practice of law.

1.    **Defendants Are Engaged in the Practice of Law**

Defendants argue that Mr. Cheney's motion depends on a determination that they are practicing law. Framing the issue thus, Defendants spend most of their opposition arguing that they are not engaged in the practice of law. (Def. Opp. to Prelim. Inj. (DE 9) at p. 4.) However, the following facts cannot be disputed:

- IPD Analytics "observes federal court hearings in the District of Columbia, relating to patent litigation involving public companies." (Def. Mot. to Dismiss (DE 8) at p. 11.)

1

- IPD Analytics sells reports "analyzing ongoing patent infringement litigation that may affect a company's stock price." <u>See</u> IPD Analytics website, "Services," at http://www.ipdanalytics.com/services/ (visited July 14, 2008).

- IPD Analytics answers clients' questions about its reports on the telephone. (Def. Opp. to Prelim. Inj. (DE 9) at p. 2.)

- IPD Analytics sells reports "evaluating the scope and validity of a company's patent portfolio." <u>See</u> IPD Analytics website <u>supra</u>, "Services."

- IPD Analytics engages in "a meticulous due diligence process for assessing the scope and validity of [ ] intellectual property." <u>See</u> IPD Analytics website, "About Us," at http://www.ipdanalytics.com/about/ (visited July 14, 2008).

- IPD Analytics' "process involves deep technical and legal research." <u>Id</u>.

These activities constitute the practice of law in either Florida or Washington, D.C. A Supreme Court decision more than 40 years ago removed any doubt that "rendering legal opinions, including opinions as to patentability or infringement on patent rights," constitutes the practice of law. <u>See Sperry v. Florida</u>, 373 U.S. 379, 382-83 (1963). The <u>Sperry</u> decision involved a practitioner in Florida that was rendering legal opinions about patents. <u>Id</u>. Like the attorneys that write reports for IPD Analytics today, Sperry was not a member of the Florida bar. <u>Id</u>. In deciding the scope of Florida's licensing authority, the Supreme Court stated that it did "not question the determination that under Florida law" rendering opinions to clients as to the patentability of their inventions under the statutory criteria "constitutes the practice of law." <u>Id</u>.

Defendants argue that they cannot be practicing law because their clients have disclaimed an attorney-client relationship. (Def. Opp. Prelim. Inj. (DE 9) at p. 4.) This argument is without merit. A person may be engaged in the practice of law without having any clients at all. For example, holding oneself out as an attorney constitutes the practice of law (<u>see Sperry v. Florida</u>, 373 U.S. at 382), even if

one has no clients. Thus, even if Defendants do not have an attorney-client relationship with their subscribers, it does not follow that Defendants are not practicing law.[i]

Defendants also argue that because the analysis they give clients relates to the patents and lawsuits of others, it does not constitute the practice of law. (Def. Opp. Prelim. Inj. (DE 9) at p. 4.) This argument is unavailing because Defendants concede that clients engage IPD Analytics for analysis "to use in their business." Id. A client's business is a significant property interest, and in Florida the test is:

> [I]f the reasonable protection of the rights and <u>property</u> of those advised requires that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen, then the giving of such advice and the performance of such services by one for another as a course of conduct constitutes the practice of law.

<u>Florida Bar v. Town</u>, 174 So.2d 395, 397 (Fla. 1965) (emphasis added); <u>accord</u> <u>Florida Bar v. Am. Legal & Business Forms, Inc.</u>, 274 So.2d 225, 228 (Fla. 1973).

Defendants concede that this is the legal standard by which their actions should be judged. (<u>See</u> Def. Opp. Prelim. Inj. (DE 9) at p. 4.) Defendants cannot dispute that the analysis they provide clients is based on "a knowledge of the law greater than that possessed by the average citizen." On its website, IPD Analytics states that it uses "one-of-a-kind" "expertise" in its "deep" legal research. <u>See</u> IPD Analytics website <u>supra</u>, "About Us." Accordingly, there can be no dispute that Defendants are practicing law in Florida. <u>See</u> <u>Fowler v. Wirtz</u>, 236 F.Supp. 22, 31-32 (D.C. Fla. 1964) (expansive list of activities constituting practice of law, including "any sort of service" that requires "the use of any degree of legal knowledge or skill").

IPD Analytics also practices law under the standard in this District. Court rules for the District of Columbia define the activities that constitute the practice of law. <u>See</u> D.C. App. R. 49(b)(2). Those rules succinctly state that the practice of law comprises "[p]reparing or expressing legal opinions," as well as providing advice as to whether legal actions by <u>others</u> "were done in accordance with applicable law." <u>See</u> <u>id.</u> at 49(b)(2)(B), (E); <u>see also</u> <u>Jacobsen v. Oliver</u>, 201 F.Supp.2d 93 (D. D.C. 2002) (concerning

---

[i]    In section II. below Plaintiff discusses why Defendants do have an attorney-client relationship with subscribers, notwithstanding the purported disclaimer of that relationship.

attorneys providing "legal advice regarding an ongoing lawsuit in the District" to non-parties). IPD Analytics prepares and expresses legal opinions, and most often those opinions evaluate whether legal actions by others were done in accordance with applicable law.

Lest the Court have any doubt about what IPD Analytics is doing, Mr. Cheney has submitted to this Court three sample documents from IPD Analytics. These documents may be found attached as Exhibits D, E, and F to Mr. Cheney's July 14, 2008 Declaration opposing Defendants' Motion to Dismiss. IPD Analytics provided these documents to Mr. Cheney on January 13, 2006, when they were recruiting him, without any request for confidentiality. The first report (Exhibit F) analyzes the patent portfolio of a company named Conor Medsystems. The second report (Exhibit E) analyzes an appeal pending at the U.S. Court of Appeals for the Federal Circuit involving patents on the drug Levaquin. A third email update to clients (Exhibit D, a less formal report) states that IPD Analytics attended the Federal Circuit hearing on Levaquin on December 7, 2005 (the day after a recruiting meeting between Mr. Cheney and an agent of Defendants in Washington, D.C.).

The reports follow a uniform format. The first two pages of the report provide an executive summary. Then, Section I recites facts relevant to the patents or the lawsuit. Section II provides a legal analysis of those facts. Section II states the relevant law under headings like "Legal Standard" (see, e.g., Conor report p. 9) and "Claim Interpretation" (Levaquin report, p. 5). Section II also contains subsections titled "Analysis." In these sections IPD Analytics attorneys apply the law in the "Legal Standard" sections to the facts in Section I and arrive at conclusions. Under the legal standards above, selling these reports constitutes the practice of law.

> **2. Defendants Do Not Dispute That If the Business Practices at Issue Are the Practice of Law, then the Restraints on Trade in the Employment and Subscription Agreements Are Unenforceable**

Significantly, Defendants' opposition never addresses the consequences in this lawsuit if this Court determines Defendants <u>are</u> engaged in the practice of law. The consequences are clear: if

4

Defendants practice law when they provide legal analysis to investors, Mr. Cheney will succeed on his claim that the restrictive covenants in the Employment and Subscription Agreements are unenforceable.

Defendants twice expressly concede that they have "no objection" to Mr. Cheney practicing law (see id. at pp. 5, 8), even though no such exception appears in the words of the restraints they seek to enforce. (Compare Krass Decl. (DE 12) at Ex. 1, ¶ 4 "Non-Hire," Ex. 2, ¶ 1.4 "Non-Competition.") This concession shows that Defendants tacitly understand they cannot enforce a non-compete agreement against Mr. Cheney for practicing law. Regardless of any choice of law issues, Defendants cite no authority in D.C. or Florida that would support enforcement of a non-compete agreement against the practice of law. Thus, if this Court determines that the Defendants practice law, the Court may infer that Defendants have conceded that the restraints on trade in the Employment and Subscription Agreements are unenforceable.

### 3. The Restraints on Trade in the Employment Agreement and Subscription Agreement Are Unenforceable for Overbreadth

By conceding that Mr. Cheney may practice law, Defendants have also conceded that the anticompetitive restrictions they drafted are overbroad. On their face, the trade restraints in the Employment and Subscription Agreements have no exception for legal practice. This Court should not indulge in Defendants' apparent invitation to redraft the restraints; it should hold them unenforceable.

Maintaining the agreements with some sort of practice of law exception, as Defendants now propose, is an unworkable course. Mr. Cheney would never know if his law practice came too close to Defendants' business. For example, Defendants expressly advertise that they "evaluat[e] the scope and validity of a company's patent portfolio." See IPD Analytics website supra, "Services." Patent portfolio analysis is a major part of any patent attorney's practice. Defendants' reinterpretation of the non-compete agreements leaves unclear whether Defendants consider this to be competition. And even if Defendants were to provide a concrete answer on this issue, another question would arise in its place like the heads of Hydra.

Defendants' argument that the agreements have reasonable scope under Florida law is also unpersuasive. None of the Florida cases Defendants cite involved attorneys practicing law; they involved insurance salesmen, cobblers, and car salesmen. (See Def. Opp. Prelim. Inj. (DE 9) at p. 7 (citing cases).) The public interest in the availability of professional services requires a different analysis than the private lay interests at issue in those cases. See Restatement (Second) of Contracts, §188 Reporter's Note. The public interest weighs against broad post-employment restrictions for lawyers. Id.

#### 4. D.C. Law Applies, and It Will Not Enforce the Restraints on Trade in the Employment and Subscription Agreements.

To the extent that there is any conflict about what law to apply in this lawsuit,[2] this District's interests in the issues presented by the preliminary injunction compel the application of D.C. law. See Wright v. Sony Pictures Entertainment, Inc., 394 F.Supp.2d 27, 31-32 (D. D.C. 2005). The District of Columbia has a strong public policy of protecting the right of clients to the counsel of their choice and the right of members of the D.C. Bar to practice law here. Neuman v. Akman, 715 A.2d 127, 130-31 (D.C. 1998) (discussing public policy undergirding restrictions on noncompetition contracts between attorneys); Legal Ethics Comm. of the D.C. Bar, Op. 181 (1987) (same); D.C. R. of Prof. Conduct 5.6, Comment 1 (same); see also Faretta v. California, 422 U.S. 806, 834 (1975) (a client's choice about counsel "must be honored out of 'that respect for the individual which is the lifeblood of the law,'" quoting Illinois v. Allen, 397 U.S. 337, 350-351 (1970) (Brennan, J., concurring)).

According to Defendants, Florida will not recognize that this lawsuit raises important questions of attorney rights and client rights. (Def. Opp. Prelim. Inj. (DE 9) at p. 4.) In contrast, courts in the District of Columbia will find the attorney-client issues central and will not enforce the anticompetitive

---

[2]    The purported choice of law provision in the Employment Agreement cited by Defendants does not resolve the question. (See Krass Decl. (DE 12) at Ex. 2, ¶ 1.8 "Governing Law.") That provision should not be enforced for the same reasons the purported forum selection clause should not be enforced. (See Plaintiff's Opposition to Defendants' Motion to Dismiss, submitted concurrently with this brief.) Further, the Subscription Agreement at issue in this preliminary injunction motion has no choice of law provision. (See Krass Decl. (DE 12) at Ex. 1.)

restrictions. (See Plaintiff's opening brief (DE 2) at pp. 4-9.) This Court should therefore apply D.C. law.

### 5. Defendants' Argument that Mr. Cheney Committed a Felony in Florida Is Untrue and Irrelevant

Defendants twice state that if Defendants' business is the practice of law, Mr. Cheney engaged in unlicensed legal practice during his employment in Florida and has therefore committed a felony.[3] (Def. Opp. Prelim. Inj. pp. 3, 12.) This is untrue and irrelevant. First, the Florida rule Defendants cite for this conclusion specifically allows an attorney like Mr. Cheney, who is a member in good standing of bars in other jurisdictions, to practice in Florida in many circumstances. See Fla. R. Prof. Conduct 4-5.5(c). More importantly, if there has been some minor infraction by Mr. Cheney, that circumstance came about because he relied upon the representations of Mr. Krass, who is a member of the Florida Bar. Mr. Krass expressly told Mr. Cheney when recruiting him that the Defendants' business did not constitute the practice of law in Florida. (See Complaint (DE 1) at ¶¶ 16, 83.) Only after Mr. Cheney's relationship with the Defendants' deteriorated did Mr. Cheney begin to question the veracity of Mr. Krass' statements on this and other points. Mr. Cheney first became aware of the likelihood that Defendants are practicing law when he began conducting legal research for this lawsuit. Mr. Cheney has not practiced law in Florida at any time in which he knew he was not authorized to do so.

In any event, this Court need not speculate about Florida's licensing policies to resolve any issue in this lawsuit. This Court only needs to determine whether the business practices at issue constitute the practice of law and whether the Defendants can lawfully restrain Mr. Cheney from those practices in this jurisdiction. As shown above, the Defendants are practicing law and cannot prevent Mr. Cheney from competing in a similar practice in the District of Columbia.

---

[3]    Defendants' citation of a criminal statute against Mr. Cheney in this civil proceeding may raise questions of professional conduct. See Fla. R. Prof. Conduct 4-3.4 (attorneys may not threaten criminal charges to gain advantage in civil proceedings); D.C. R. Prof. Conduct 8.4(g) (same).

## II.    Mr. Cheney and His Clients Will Be Irreparably Harmed Without Immediate Relief

On the issue of irreparable harm, Defendants limit their defense to arguments that Mr. Cheney has no attorney-client relationship with IPD Analytics clients. (Def. Opp. Prelim. Inj. (DE 9) at pp. 8-9.) Defendants provide no argument against irreparable harm in the event that this Court determines that Defendants are practicing law. Neither do they provide any counter to the legal authorities that presume that harm occurs when an attorney cannot communicate his departure to clients. See Legal Ethics Comm. of the D.C. Bar, Op. 221 (1991) ("client's decision on representation may well be affected by the attorney's unexplained failure to communicate regarding his or her departure"); Mbakpuo v. Ekeanyanwu, 738 A.2d 776, 783 (D.C. 1999) (affirming injunction where potential damage to attorneys' reputation would be irreparable harm); see also Patriot, Inc. v. U.S. Dep't of Housing & Urban Dev., 963 F.Supp. 1, 5 (D.D.C. 1997) ("plaintiffs have demonstrated irreparable harm in damage to their business reputation"). Thus, if this Court determines that Defendants are practicing law, it may presume that Defendants have conceded harm.

Defendants argue that clients cannot have an attorney-client relationship with Mr. Cheney because clients disclaimed that relationship in signing Defendants' Subscriber Agreement. (Def. Opp. Prelim. Inj. (DE 9) at p. 4; Krass Decl. (DE 12) at Ex. 1, ¶ 3.) However, the Subscription Agreement must be viewed with skepticism. It is a form contract drafted by attorneys at IPD Analytics. IPD Analytics requires lay persons to sign the form before providing legal services. In such circumstances, this Court should be concerned about the possibility of undue influence on clients.

State bars and courts have adopted Rules of Professional Conduct that prohibit some agreements between attorneys and clients. Both Florida and D.C. prohibit lawyers from asking clients to sign agreements that limit the lawyer's liability. See Fla. R. Prof. Conduct 4-1.8(h); D.C. R. Prof. Conduct 1.8(g)(1).

Defendants' requested waiver in paragraph 3 of the Subscriber Agreement is a thinly veiled attempt to avoid malpractice liability in the practice of law. Defendants' true intent with paragraph 3 is

8

confirmed in paragraph 8 of the Subscriber Agreement. That paragraph, titled "Legal Disclaimer," states that Defendants "cannot be held liable by Subscriber for any losses that may relate to information obtained" from Defendants, and that in any event their liability "shall not exceed $3000.00." (Krass Decl. (DE 12) at Ex. 1, ¶ 8, emphasis added.) This limitation is particularly unreasonable considering the fact that bad advice from Defendants could result in an institutional investor taking significant losses in the stock market.

There are some aspects of the attorney's behavior that cannot be disclaimed through a contract with a client. One case particularly analogous to Defendants' behavior is In re Harris, 152 B.R. 440 (Bkrtcy. W.D. Pa. 1993). There the court stated,

> Neither the sign allegedly posted on the wall of Kasuba's office, which states that he does not give legal advice, nor the "agreement" clients were allegedly required to sign, which states that neither acts as an attorney nor gives legal advice, alters the conclusion just reached. Whether or not Kasuba and his clients so realized, Kasuba practiced law.

Id. at 446, n. 1; compare Bray v. Brooks, 41 S.W.3d 7, 13 (Mo. App. W.D. 2001) (attorney cannot hide behind "waiver, consent or lack of objection" by client when charged with the unauthorized practice of law).

Defendants claim that any argument that there was an attorney-client relationship between IPD Analytics and Highline Capital is "demolished" by a declaration from Highline Capital's Chief Operating Officer. The Highline Capital declaration is best interpreted as evidence that one client, after learning of Mr. Cheney's departure, elected to continue its relationship with IPD Analytics. It is not surprising, then, that Highline Capital has executed a declaration that shows fidelity to the counsel of its choice. Mr. Cheney respects that choice.

Mr. Cheney never contended that his relationship Highline Capital is the only relationship suffering harm. (See Pl. opening memo (DE2) at p. 11.) The more significant aspect of Highline's call is that it demonstrates that clients do not know Mr. Cheney has left IPD Analytics. Defendants have not disputed Mr. Cheney's assertion they have never informed clients of Mr. Cheney's departure. They merely assert that "no subscriber to any of its newsletters has raised any concerns about whether Mr.

9

Cheney is still an employee of IPD Analytics." (Def. Opp. Prelim. Inj. (DE 9) at p. 9.) Of course, if clients do not know that Mr. Cheney is gone (as demonstrated by the call from Highline), they would not raise any concerns.

Under the Rules of Professional Conduct, Plaintiff Cheney is obligated to inform his clients of his departure from Defendants and of Mr. Cheney's new location and business. See Legal Ethics Comm. of the D.C. Bar, Op. 273 (1997), citing D.C. R. of Prof. Conduct 1.4, "Communication." If Plaintiff Cheney is unable to communicate his departure from Defendants' company, his clients may assume that he is negligent in his communications and choose not to continue their relationship with him. See Legal Ethics Comm. of the D.C. Bar, Op. 221 (1991) ("client's decision on representation may well be affected by the attorney's unexplained failure to communicate regarding his or her departure"). Even if no clients elect to follow Mr. Cheney, it is still his right to communicate his departure to them. Id. ("firm's form notification letter is insufficient as a substitute for the departed lawyer's right to send announcements after the termination of employment," emphasis added).

Defendants' arguments on the irreparable harm factor are unpersuasive. For the reasons above and those in Mr. Cheney's opening brief, the ongoing harm to Mr. Cheney and his clients weighs in favor of preliminary relief.

**III.    The Balance of Hardships Tips in Favor of Allowing Plaintiff Cheney to Contact His Clients**

On the issue of hardship to Defendants, Defendants again fail to provide a defense that would apply if this Court determines their business is the practice of law. Defendants instead presume that they are not practicing law and attempt to claim trade secret rights that only apply to lay industries. For example, Defendants argue that the relief Mr. Cheney seeks will require them to disclose to Mr. Cheney "non-public confidential proprietary trade secret information." (Def. Opp. Prelim. Inj. (DE 9) at p. 10.)

Plaintiff respectfully disagrees. The relief that Mr. Cheney requests would not require disclosure of any information Defendants have a legitimate interest in protecting. Mr. Cheney has a right to personally communicate with clients, and Defendants cannot withhold client contact information to

10

subvert that right. See Legal Ethics Comm. of the D.C. Bar, Op. 221 (1991). Further, a client file belongs to the client, not to IPD Analytics, and a client's "entire file" must be surrendered at the client's request. See Legal Ethics Comm. of the D.C. Bar, Op. 333 (1991).

Defendants presented no claim to harm that would apply if they are practicing law. Thus, if this Court decides that Defendants' business constitutes the practice of law, this Court may presume Defendants have disclaimed any harm to them. Such a conclusion tips the balance of hardships in favor of Mr. Cheney.

IV.   **Defendants Fail to Identify Any Public Interest Supporting Their Position**

Mr. Cheney has demonstrated that the preliminary relief he seeks would advance an important public interest: the right of a client to have legal counsel of his choice. Neuman v. Akman, 715 A.2d 127, 130 (D.C. 1998). In the face of this compelling interest, Defendants fail to identify any public interest that would support withholding relief; they merely assert that neither attorney nor client rights are at issue here. Thus, if this Court concludes that attorney and client rights are at play in this lawsuit, it may presume Defendants have conceded any argument about the public interest.

Even if this lawsuit did not involve the practice of law, restraints on trade like those Defendants drafted are economically inefficient. They will "remove a . . . competitor from competition," and competitive markets are more efficient. See Restatement (Second) of Contracts, §188, Comment c. For this additional reason, Defendants' sweeping restraints are harmful to the public. Id.

V.   **Because Defendants Have Failed to Propose Any Other Form of Relief, Mr. Cheney's Proposed Relief Should Be Granted.**

As shown in this reply and in Plaintiff's opening brief, Mr. Cheney has made a strong showing on each of the four preliminary injunction factors and is therefore entitled to relief. Defendants have failed to propose any different form of relief if this Court finds Mr. Cheney is likely to succeed on the merits of his claims. Accordingly, Plaintiff respectfully requests that this Court promptly enter Plaintiff's proposed order. The measures Plaintiff proposes will protect clients and Mr. Cheney while this litigation proceeds.

11

Dated July 14, 2008                              Respectfully submitted,

                                                 _Clark S. Cheney_
                                                 Clark S. Cheney, DC Bar No. 491919
                                                 Law Office of Clark S. Cheney
                                                 517 F Street, NE
                                                 Washington, DC 20002
                                                 (202) 253-7195

                                                 *Pro se Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___14___ day of July, 2008, I filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record identified below in the manner specified.

### ATTORNEYS FOR DEFENDANTS

Steven M. Umin, Esq.
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, N.W., Suite 700
Washington, District of Columbia 20037
**Via U.S. Mail**

Dennis Richard, Esq.
RICHARD & RICHARD, P.A.
825 Brickell Bay Drive
Tower III - Suite 1748
Miami, Florida 33131
**Via U.S. Mail**

Clark S Cheney